**DEMMERT et al. v. CITY OF KLAWOCK.**

No. 13264.

United States Court of Appeals, Ninth Circuit.

Sept. 18, 1952.

Wilfred C. Stump, Ketchikan, Alaska, for appellants.

Frederick Paul, Seattle, Wash., and William L. Paul, Jr., Juneau, Alaska, for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

HEALY, Circuit Judge.

This is an appeal from a summary judgent taken against appellants Demmert and the Miners and Merchants Bank, the latter being an escrow holder.

The suit involves a claim of the City of Klawock for taxes assessed upon a salmon

cannery of the Demmerts over the period 1943 to 1951. Prior to the commencement of the suit in June of 1951 the Demmerts had sold the cannery to the United States in trust for a cooperative association composed of Indians. The purchase price was $146,000, of which amount, pursuant to agreement with the Demmerts, a sum said to be representative of the City's claim for taxes was deposited by the purchasers in escrow with the Bank under conditions later to be considered.

After institution of the suit the City served various requests for admissions on the defendants Demmert pursuant to Rule 36, Fed.Rules Civ.Proc. 28 U.S.C.A. The requests were not answered. Thereafter the City moved for summary judgment under the provisions of Rule 56, the motion being accompanied by affidavits and by various papers and documents which had been obtained through the use of interrogatories served on the representative of the United States who had acted in behalf of the cooperative in consummating the purchase of the cannery. The court granted the motion and adjudged that the City recover of the escrow fund in the custody of the Bank the sum of $3,057.75 in lieu of the taxes, plus some $600.00 as penalty and interest thereon.

Prior to the rendition of this judgment the defendants filed an answer to the complaint, setting up three defenses, namely (1) that the action could not succeed because no personal action lies in Alaska to collect property taxes; (2) that the owners of the cannery (the Demmerts) were Alaska Indians, and that land to which Indians have acquired a restricted deed from the United States is not taxable by a municipality; and (3) that a Territorial limitations statute, Sec. 55–2–7, A.C.L.A. fixes a limitation of two years for actions upon a liability created by statute, and a suit to collect taxes is such an action.

■ Before turning to these defenses we will briefly notice a contention that there existed genuine issues of fact which rendered improper the entry of a summary judgment. One of these alleged issues, and in our opinion the only one requiring attention, relates to the location of the

cannery. If it is on land to which the Demmerts, being Indians, had acquired title by restricted deed the property would be immune from taxation under provisions of 48 U.S.C.A. § 355a to 355e. However, an affidavit of a City official submitted in support of the motion for summary judgment states that the cannery is located below mean high tide, and that while members of the Demmert family had in 1948 obtained restricted deeds to property in the upland, such deeds cover virtually no part of the cannery site. These positive assertions of fact do not appear to have been controverted. Title to tidelands in Alaska is concededly in the United States, and buildings or improvements constructed on tidelands would normally partake of the nature of personal property, subject to taxation as such by the City.

■ As to the legal defenses set up in the answer, the second has already been disposed of by our observations relative to the nature and location of the property taxed. Defenses (1) and (3) may best be considered in light of the escrow agreement to which, as above noted, the Demmerts were parties of the first part.

The opening paragraph of this agreement authorizes the purchasers of the cannery to deposit with the Bank, out of the purchase price, the sum of eleven thousand odd dollars assumed to represent the amount of the City's claim. Paragraph number 2 provides: "That the Escrow Holder shall not release said funds except on joint written authorization from the First and Second parties to this agreement." However, paragraph numbered 3 states: "That the First Parties agree that all legal tax claims of the City of Klawock against the property subject of the sale between the parties, shall be paid from said sum in escrow." Paragraphs numbered 4 and 5 make provision for a possible settlement of the tax liability by arrangement between the Demmerts and the City. The final paragraph (numbered 7) reads: "In the event that it is determined that the First Parties have no tax liability to the City of Klawock, then all money held by the Escrow Holder shall be the sole property of the First Parties; in the event it is determined that part of

said money held by the Escrow Holder shall be paid to the City of Klawock, then the balance of said sum shall be sole property of the First Parties. It being understood between the parties hereto that said sum deposited with the Escrow Holder shall be on escrow for the sole purpose of determining and paying any legal tax claim that the City of Klawock shall have against the property the subject of sale between the First Parties and Second Party."

■ The Demmerts argue that there has been no joint written authorization of the parties for the release of the funds as contemplated by paragraph 2, hence a necessary condition precedent to distribution has not been fulfilled. Looking at the agreement in its entirety, however, it seems plainly to have been the intent of the parties to create a fund out of which the taxes were to be paid in event agreement were reached with the City, or, failing agreement, in accordance with a judicial determination of the question of tax liability. We think that paragraph 2 was intended to govern only in event no agreement were reached with the City or judicial determination made of the controversy. The basic understanding is expressed in the third paragraph, and this in itself amounts to a written authorization to the Bank to distribute the fund in accordance with an authoritative determination of the legality of the tax claims—a determination which could be made only by the courts.

■ The suit brought by the City is in the nature of an action in rem against a fund created by voluntary act of the seller and purchaser, a fund of which the City is beneficiary. The only matter for adjudication contemplated by the agreement is the legality and amount of the City's tax claim. The suit is not an action in personam for the recovery of taxes, hence we think it unnecessary to inquire whether a personal action lies in Alaska to collect taxes of the nature involved here.

■ The remaining question is whether the tax claim is in part barred by the two-year statute of limitations relied on. We believe it unnecessary to consider the reach of this statute. An affidavit of the mayor of the City was presented in support of the motion for summary judgment, stating that the Demmerts had in past years repeatedly promised to pay the taxes in consideration of forbearance by the City from taking legal steps to collect them; that the Demmerts constantly represented that they were without funds, but would shortly come into funds with which to pay; and that in reliance on these representations the City forbore to take legal action. In opposition to the motion the defendants supplied an affidavit of Charles Demmert which seems to confirm the City's showing that there had been during the years repeated conferences with the City authorities in respect of the taxes. This affidavit does not controvert the mayor's statements in respect of defendants' requests for forbearance and promises to pay. While the record does not disclose his reasons, it seems probable that the trial judge regarded these circumstances as estopping the defendants from urging the statute. We are not prepared to say that such a conclusion would be unwarranted. Too, it is not irrational to regard the escrow agreement as constituting a waiver of the statute.

Affirmed.