Harold GROSETH, Appellant,

v.

Orville NESS and Northern Insurance Adjusters, a corporation, Appellees.

No. 617.

Supreme Court of Alaska.

Nov. 18, 1966.

---

John M. Savage, Anchorage, for appellant.

Daniel A. Moore, Jr., Delaney, Wiles, Moore & Hayes, Anchorage, for appellee Orville Ness.

John C. Hughes and Robert C. Erwin, Hughes, Thorsness & Lowe, Anchorage, for appellee Northern Ins. Adjusters.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

Within one month from the time appellant had emigrated to the United States from Norway, he became involved in an accident. On January 10, 1961, while walking on the Glenn Highway near Chugiak, Alaska, appellant was struck by an automobile driven by appellee Orville Ness and owned by Helen Long.

AS 09.10.070 of Alaska's Code of Civil Procedure requires that an action for personal injuries be commenced within two years after the cause of action has accrued.[1] On July 31, 1963, more than two years after the accident, appellant "commenced" a negligence action for personal injuries by filing a complaint in the superior court.[2] In his complaint appellant alleged that appellees should be estopped from relying upon the two-year statute of limitations. In his estoppel allegations appellant asserted that he

would show that the statute of limitations ordinarily barring a claim filed this late after the accident occurring on January 10, 1961, has been tolled by defendant Simpson's (made individually and as agent for Northern Insurance Adjusters) promises that plaintiff Groseth's injuries would be paid for and an equitable settlement made if plaintiff Groseth would forbear suit. He will show that he detrimentally relied on such promises, forbearing suit, and that the defendants have now refused to pay for his injuries or enter into an amicable settlement.[3]

In their answers, appellees alleged, as an affirmative defense, the bar of the two-year statute of limitations. Then appellee Northern Insurance Adjusters made a motion, which was granted, for separate trial of the estoppel-statute of limitations issue.[4] A pre-trial conference was thereafter held and a pre-trial order entered. After six days of trial, a superior court jury returned answers to interrogatories which had been propounded to them concerning the separate estoppel-statute of limitations issue. On the basis of the jury's answers to these interrogatories,

---

1. AS 09.10.010 provides:
 No person may commence a civil action except within the periods prescribed in this chapter after the cause of action had accrued * * *.
 AS 09.10.070 states that:
 No person may bring an action * * * for * * * injury to the person * * * unless commenced within two years.

2. See Silverton v. Marler, 389 P.2d 3, 5 (Alaska 1964), where we held that a civil action is commenced by the filing of a complaint, and Civ.R. 3.

3. Defendant Jack Simpson was subsequently dismissed as a party defendant during the trial.

4. Civ.R. 42(b) reads:
 The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims or issues.

the superior court entered a judgment which provided:

1. That the statute of limitations, as to the January 10, 1961, claim of the plaintiff has run and plaintiff's action is barred thereby.

2. That the plaintiff's complaint against each and every defendant is dismissed with prejudice.

Appellant assigns as error numerous exclusionary evidentiary rulings of the lower court's as well as several of the court's instructions and interrogatories.[5] Review of the record in this case and the lower court's instructions pertaining to the estoppel issue has convinced us that although the trial court's instructions were erroneous, such errors were harmless.[6]

In the complaint appellant grounded his allegations of estoppel upon a promise by Jack Simpson, who was appellee Northern's agent, to pay him for his injuries if he would forbear from instituting suit. At the very outset of the trial appellant's counsel indicated to the jury that his proof would show an estoppel in that

in * * * dealing with Mr. Groseth * * * Mr. Simpson led Mr. Groseth

to believe that they were ultimately going to make an equitable settlement of this case, and this is the basis of our case, that Mr. Groseth was lulled beyond the Statute of Limitations * * *.[7]

After counsel for appellant had completed his opening statement, appellee Northern filed a motion for dismissal. The basis for appellee's motion was that it would result in an "unfair advantage" to permit appellant to proceed on an entirely new theory of estoppel "contrary to the pleadings and contrary to the pre-trial order."[8] Northern's motion, together with certain other motions,[9] was then taken under advisement and counsel were informed that these motions would be ruled on at a later stage in the case.

The record indicates that Northern's motion never was explicitly ruled on by the trial judge. Examination of the record also demonstrates that there was a total absence of any evidence that the adjuster, Jack Simpson, in fact promised appellant that he would be paid for his injuries if he would refrain from bringing suit. Despite the fact that appellant's counsel, in his opening statement, had abandoned the promise-estoppel theory which had been al-

5. In his brief appellant sets forth twenty separate specifications of error.

6. Civ.R. 61 provides:
 HARMLESS ERROR.
 No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

7. After the jury had been impaneled and before counsel made their opening arguments, the trial judge briefly outlined the contentions of the parties. In discussing appellant's position, the trial judge stated in part:

The complaint says that Mr. Simpson told him that he would be paid and that an adjustment would be made and asked him to forbear bringing suit and that he did forbear bringing suit and that by reason of that, that he did not bring the suit in time, and then that no settlement was made with him. Accordingly, he's claiming that because of the circumstances that the defendants are not entitled to interpose the Statute of Limitations * * *.

8. More particularly, Northern's motion read in part:
 The plaintiff has now announced in open court an abandonment of the theory of promise to pay and now seeks an entirely new theory of estoppel contrary to the pleadings and contrary to the pre-trial order.

9. Appellee Ness had moved for a mistrial on the grounds that counsel for appellant's opening statement injected prejudicial issues in a trial which was intended only to resolve the estoppel-statute of limitations issue.

leged in the pleadings, and in disregard of the circumstance that there was an absolute absence of any evidence which would support a promise-grounded estoppel theory, the court's instructions made a promise of payment (in exchange for appellant's forbearance) a prerequisite to the jury's finding of an equitable estoppel.

There are several circumstances which should be referred to before further discussion is had of the court's instructions in regard to estoppel. At the conclusion of appellant's case in chief appellees moved for directed verdicts based in part upon appellees' previous contentions that appellant's proof had varied from his theory of estoppel as alleged in the complaint and pre-trial order. At this point counsel for appellant moved to amend the pleadings to conform to the evidence by striking that portion of the pleadings which "state, in effect, that there was a promise to pay if there was a forbearance of suit * * * and that just an ordinary pleading of estoppel [be] entered in its place * * *." The trial judge, while indicating that he was of the opinion that appellees' motions for directed verdicts should be granted concluded that in the event of an appeal this court should have the benefit of a "full record rather than * * * a part record" and "Accordingly, I'm going to hold these motions in abeyance." After the parties had rested their respective cases, appellees again moved for directed verdicts and, as before, the trial court declined to rule on these motions. Subsequently, appellant's motion to amend his pleadings to conform to his proof was denied by the trial court on the grounds that there was no evidence to support the motion to amend.[10]

In delineating the issues which were to be determined by the jury, the trial court instructed them that:

This proceeding is for the purpose of determining the facts in order that it may be adjudged as to whether the statute of limitations is or is not a bar to this particular lawsuit. * * * Your consideration will be limited to the question as to whether or not Jack Simpson, acting for Northern Insurance Adjusters, promised the plaintiff that his injuries would be paid for and an equitable settlement made if the plaintiff Groseth would forbear suit and as to whether or not the plaintiff Groseth detrimentally relied on any such promise as was made and did for that reason forbear bringing suit within the two-year statutory period.[11]

This instruction was followed by one in which the jury was told that:

As a matter of law, when the act or promise of one causes another to do or forbear from doing something he would have done or to do something which he otherwise would not have done, as the case may be then the other party is estopped from taking advantage of the

---

10. At the time afforded for the hearing of objections to instructions, counsel again renewed his motion to amend appellant's pleadings to conform to the evidence. The motion was denied. The trial court stated in so ruling:

I think that there is no proof there that was not or should not have been covered * * * by the complaint.

* * * * * *

There's no evidence to support any such amendment, and the motion will be denied. * * *

11. In regard to this asserted promise, the court also instructed the jury that:

In this complaint, the plaintiff claims that the two-year statute of limitations, above mentioned, has been tolled by reason of the fact that, as plaintiff claims, Jack Simpson, as agent for Northern Insurance Adjusters, promised that plaintiff Groseth's injuries would be paid for and an equitable settlement made, if plaintiff Groseth would forbear suit. Plaintiff claims that he detrimentally relied on the promises allegedly made by Jack Simpson and did forbear bringing suit and claims that the defendants have now refused to pay for plaintiff's injuries or to enter into an amicable settlement with plaintiff.

act or omission caused by his own act or promise. * * *[12]

It will be for you to determine in this case as to whether under all the facts and circumstances as disclosed by the evidence in this case *and in the light of the allegations of plaintiff's complaint,* as above set forth, plaintiff Groseth is entitled to the benefit of the doctrine of estoppel as herein set forth. * * * (Emphasis added.)

At another point in the instructions the jury was informed that their

verdict must be for the defendants and all of them unless you find that the defendants or some of them made a binding promise to pay the plaintiff's claim if he would forbear bringing suit within the two year period next succeeding the date of the accident.[13]

Each of the instructions and interrogatories, to which we have alluded, was timely and appropriately objected to by counsel for appellant.

■ As we have indicated, our reading of all of the court's instructions in light of the evidence which was produced at the trial has led us to conclude that the instructions concerning the estoppel question were erroneous. The record is devoid of any evidence of a promise on Jack Simpson's part. In such a situation instructions which were directed toward the necessity of the jury's finding such a promise in order to give rise to an estoppel were unwarranted.[14] The error in these instructions was harmless because we are of the opinion that appellees' motions for directed verdicts should have been granted as there was no evidence from which the jury could have found an estoppel.[15]

12. This instruction began as follows:

Estoppel is a legal term meaning stopped or barred or precluded. In effect, in this case plaintiff has claimed that the defendants are estopped from asserting or claiming the benefit of the two-year statute of limitations hereinabove mentioned. As a matter of law, when the act or promise of one causes another to do or forbear from doing something he would have done or to do something which he otherwise would not have done, as the case may be then the other party is estopped from taking advantage of the act or omission caused by his own act or promise. It is said that one cannot justly or equitably lull his adversary into a false sense of security, and thereby cause him to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his conduct as a defense to the action when brought.

13. Interrogatory number 1, which was submitted to the jury, read:

Do you find that Mr. Simpson, acting for Northern Insurance Adjusters, promised plaintiff that his injuries would be paid for and an equitable settlement made if plaintiff would forbear suit?

In all, a total of nineteen interrogatories were submitted to the jury. Interrogatories numbered 2 and 3, which were related to interrogatory number 1, read as follows:

2. If your answer to No. 1 is 'yes' when was that promise made:

_____

If your answer to No. 1 is 'yes', you should answer No. 3. If your answer to No. 1 is 'no', No. 3 should not be answered.

3. Did plaintiff forbear bringing suit in reliance on the promise made by Mr. Simpson to the plaintiff to the effect that plaintiff's injuries would be paid for and an equitable settlement made if plaintiff would forbear suit?

Yes——— No———

14. We have held that instructions must have an evidentiary basis. See Saslow v. Rexford, 395 P.2d 36 (Alaska 1964); Evans v. Buchner, 386 P.2d 836, 837–838 (Alaska 1963); Wilson v. Interior Airways, Inc., 384 P.2d 956, 958 (Alaska 1963).

15. Decisions of this court dealing with instructions and questions of harmless error are Meyst v. East Fifth Ave. Serv., Inc., 401 P.2d 430 (Alaska 1965); Alaska Brick Co. v. McCoy, 400 P.2d 454, 456 (Alaska 1965); Zerbinos v. Lewis, 394 P.2d 886, 889–90 (Alaska 1964); Mitchell v. Knight, 394 P.2d 892 (Alaska 1964); Veal v. Newlin, Inc., 367 P.2d 155 (Alaska 1961); Davidsen v. Kirkland, 362 P.2d 1068 (Alaska 1961).

Both federal and state authorities have established that the doctrine of equitable estoppel is available as a bar to inequitable reliance upon statutes of limitations.[16] In Glus v. Brooklyn E. Dist. Terminal,[17] the Supreme Court of the United States characterized this doctrine of estoppel in the following manner:

As Mr. Justice Miller expressed it * * * 'The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. And although the cases to which this principle is to be applied are not as well defined as could be wished, the general doctrine is well understood and is applied by courts of law as well as equity where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim.'[18]

We are of the opinion that the doctrine of equitable estoppel as a prohibition against unjust reliance upon a statute of limitations is a salutary one and therefore adopt the rule for this jurisdiction.[19]

Although we adopt this rule in our jurisdiction, our study of the entire record in this case has led us to conclude that appellant's evidence did not warrant the submission of this issue to the jury. The evidence reveals that although appellant was injured on January 10, 1961, the first time appellant and Simpson actually discussed settlement was on August 7, 1962, approximately one and one-half years after the accident. The reason for this delay was that appellant did not want to discuss settlement until his physical condition had become settled and until he was discharged from his doctor's care.

The evidence further shows that appellant and Simpson discussed settlement on three separate occasions, namely, August 7, September 23, and October 31, 1962. Either appellant's brother-in-law, Oskar Pettersen, or appellant's friend Karl Soderberg, were present and acted as interpreters at each of these meetings between appellant and Simpson (who had disclosed at the outset that he was an insurance adjuster).

At the September 23, 1962, meeting Simpson conveyed an offer of $5,000.[20] This was rejected as inadequate by appellant who stated he desired $13,500. It was during this conversation that Simpson advised appellant that there was a $10,000 limit in the insurance and that an attorney might charge as high as 50 percent for his services. On October 31, 1962, appellant again suggested $13,500 as a settlement. Then, on November 29, Simpson was requested by Pettersen to come to appellant's home that evening. Simpson complied, but appellant was not there. The next day Pettersen informed Simpson that appellant did not want to come to Simpson's office or to discuss settlement anymore.

It is undisputed that at no time prior to this March 14, 1963, meeting (and prior to the running of the statute of limitations on January 10, 1963) did Simpson mention

16. See Annot., 3 L.Ed.2d 1886–1887 (1959), where federal precedents giving recognition to the doctrine of equitable estoppel as a bar to reliance upon statutes of limitations are collected. In Annot., 24 A.L.R.2d 1413 (1952), at 1417–18, state authorities are collected. See also Demmert v. City of Klawock, 199 F.2d 32, 34 (9th Cir. 1952), for an instance of pre-statehood recognition of this doctrine.

17. 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959).

18. See also the concurring opinion of Judge Magruder in Bergeron v. Mansour, 152 F.2d 27, 33 (1st Cir. 1945).

19. This is a question of first impression, none of our prior decisions dealing with limitation issues having involved this precise issue.

20. Oskar Pettersen's testimony was that Simpson's first offer was $7,500, and that later the offer was reduced to $5,000.

the statute of limitations to appellant. It is also undisputed that appellant was advised not only by Simpson but by Karl Soderberg and Oskar Pettersen that he should hire an attorney. In this regard Pettersen testified that at the October 31, 1962, meeting, he discussed with appellant the necessity of obtaining an attorney, and made the statement that there were many good lawyers in Anchorage and that appellant should hire one. After his futile attempt on November 29 to arrange a meeting between Simpson and appellant, Pettersen testified that he again spoke with appellant about the need for a lawyer and was told by appellant that he could get one for himself. At this same time appellant told Pettersen that "he either had a lawyer * * got a lawyer or he was going to get a lawyer."

Of particular significance is the fact that the record is devoid of any evidence that appellant relied upon any false or fraudulent representation or conduct on Simpson's part, and by virtue of such reliance refrained from obtaining the services of an attorney and from instituting timely suit. In short, the proof developed by appellant did not show that he was led to believe that there would be an equitable settlement of his claim, and because of such belief, resulting from Simpson's representations and conduct, was "lulled" beyond the statute of limitations. As we note later, appellant's own testimony shows that the reason he did not obtain an attorney was that he was waiting to receive advice from the Norwegian Embassy. Simpson did inform appellant that if he wanted over $10,000 (or as much as $10,000), then he would have to get a lawyer. The record also shows that appellant was urged by Simpson, Pettersen, and Soderberg, individually, on other occasions to obtain an attorney. It is pertinent that appellant's proof does not show that he relied upon Simpson's 50 percent attorney's fee statement in such a manner that it deterred him from obtaining counsel.

The foregoing comments are equally applicable to appellant's claim that appellees should be estopped because, in January 1963 (prior to the running of the statute of limitations), Simpson learned that Ness had $10,000 insurance but did not convey this fact to appellant. We note that Simpson never informed appellant that Ness did not have insurance of his own; that Simpson did not represent this second carrier; and that this discovery came after negotiations had terminated the preceding October.

In summary then, viewing the evidence in the light most favorable to appellant, we hold that the facts of Simpson's negotiations with appellant did not give rise to an estoppel and that the court should have granted appellees' motions for directed verdicts.

Appellant further contends that the trial court erred in four additional aspects of its instructions. Initially, appellant contends that it was error for the court to instruct that the insurance adjuster was under no duty to advise appellant as to the statute of limitations.[21] Appellant has not pointed to any decision which has required adjusters, as a matter of law, to give advice in regard to the potential applicability of statutes of limitations.[22]

---

21. Appellant concedes that this is a correct statement of law but argues the instruction did not go far enough.

The court's instruction reads in full as follows:

You are instructed that as a matter of law the defendant Northern Insurance Adjusters and its employees were under no obligation whatsoever to instruct or attempt to instruct or advise the plaintiff in respect to the law of the statute of limitations.

22. Appellant relies upon Kinsey v. Thompson, 44 Ill.App.2d 304, 194 N.E.2d 565 (1963); Nesbitt v. Erie Coach Co., 416 Pa. 89, 204 A.2d 473 (1964); Stark v. Equitable Assur. Soc'y, 205 Minn. 138, 285 N.W. 466 (1939). We find that none of these authorities support appellant's position.

We also note that appellant has not persuaded us that his evidence brought him within any of the three exceptions stated

We do not consider this instruction erroneous.[23] We reach a similar result in regard to appellant's objection to the court's instruction that all persons are "presumed to know the law."[24] Considered as a separate instruction appellant has not convinced us that the instruction was erroneous.[25]

Appellant also asserts that the following instruction was erroneous:

> In making a determination whether or not an estoppel was created by the defendants, you can consider only that evidence, that is acts, conduct, representations, promises, and so forth, which occurred prior to January 10, 1963.

 This instruction is a correct statement of the law on the facts of this case as it limited the jury's scrutiny of appellees' conduct to a period of time which extended up to the expiration of the statute of limitations.[26] We, therefore, find no merit in appellant's contention that this instruction

was erroneous. As to appellant's last point in regard to instructions, we have concluded that the trial court properly rejected appellant's proposed instruction pertaining to the standard of conduct required of an insurance adjuster. Since this instruction did not correctly state the law as to estoppel (we consider it deficient in regard to the element of reliance) the giving of this instruction could have possibly misled the jury and, therefore, the trial court correctly refused this proposed instruction.[27]

The bulk of appellant's specifications of error in regard to numerous exclusionary evidentiary rulings on the part of the trial court have been inadequately briefed, yet we deem it appropriate to make reference to these contentions.

 At one point in the trial appellant sought to admit into evidence the entire file of appellee Northern's agent, Jack Simpson. Appellant offered this file pursuant to Civ.R. 44(a) (1) which establishes

---

in 3 Restatement of Torts § 551 (1938) (assuming that this section of the Restatement is applicable).

23. To establish an equitable estoppel it is generally necessary that the party seeking to assert it show that the other party made some misrepresentation, or false statement, or acted fraudulently and that he reasonably relied on such acts or representations of the other party, and due to such reliance did not institute suit timely. See Bergeron v. Mansour, 152 F.2d 27, 33 (1st Cir. 1945); Rex v. Warner, 183 Kan. 763, 332 P.2d 572 (1958); Annot., 3 L.Ed.2d 1886–87, 1889 (1959); Annot., 24 A.L.R.2d 1413, 1420–23.

24. The full text of this instruction stated:
You are instructed that mere inaction or silence on the part of Northern Insurance Adjusters or their employees is an insufficient basis upon which to assert liability or to toll (stop) the running of the Statute of Limitations. Accordingly, if you find that Northern Insurance Adjusters or their employees remained silent, they had every right so to do and the plaintiff has no reason to complain thereof, because all persons are presumed to know the law and this presumption is a law itself.

25. We are of the opinion that this instruction should have been expanded to inform the jury that although this presumption subsists, it would not prohibit them from concluding that a party was actually misled by the acts, representations, or omissions of another party.
There is authority to the effect that equitable estoppel requires more than inaction or silence by a person who has no obligation to speak or act. See Caianello v. Shatkin, 78 R.I. 471, 82 A.2d 826, 829 (1951).
Yet there can be circumstances where inaction or silence combined with acts or representations can give rise to an appropriate situation calling for the application of the estoppel doctrine. See authorities cited in note 23 supra.

26. See Annot., 130 A.L.R. 8, 18–19 (1941).

27. On this point see Yoham v. Rosecliff Realty Co., 267 F.2d 9 (3d Cir. 1959); Cherry v. Stedman, 259 F.2d 774 (8th Cir. 1958); Travelers Indem. Co. v. Bengtson, 231 F.2d 263 (5th Cir. 1956); see also 2B Barron & Holtzoff, Federal Practice & Procedure § 1102 (rev. ed. 1961); 5 Moore, Federal Practice § 51.-06 (2d ed. 1964).

that under certain circumstances business records are admissible into evidence.[28] Appellant did not inform the trial court of the relevancy or materiality of the proposed exhibit. The only basis upon which appellant sought the file's admission was the fact that while testifying Simpson had to refer to this file on many occasions in order to refresh his recollection. Although Civ.R. 44(a) (1) does furnish the basis for the admissibility of business records, we conclude that under the facts of this case and our decision in Zerbinos v. Lewis[29] the trial court did not err in refusing to admit the adjuster's file into evidence. Appellant has also failed to show us in what manner he was prejudiced by the trial court's exclusion of this proposed exhibit.

 It is also asserted that the trial court erroneously refused to permit appellant's counsel to ask leading questions of appellant. During the course of appellant's testimony, his counsel was "surprised" by certain responses he received from appellant as to why appellant had not obtained an attorney prior to appellant's last meeting in October 1962 with Simpson.[30] In essence, appellant testified that he did not obtain a lawyer because he was waiting to hear from the Norwegian Embassy. Whether leading questions are to be permitted lies within the trial court's

discretion.[31] We find no abuse of discretion here.

 Appellant further argues that the trial court erroneously excluded a letter which appellant wrote to Ness after Simpson had informed him that he would have to look to Ness if he wanted to recover over $10,000. The letter was offered as "a past recordation of Mr. Groseth's state of mind at this time of the negotiations." The record demonstrates that earlier in the trial, counsel had stipulated that appellant had written and made a demand of appellee Ness for $13,500. As the issue is now presented to us we can find no error. Even if error was committed, we would consider it harmless because the proffered letter was merely cumulative when viewed in light of the stipulation.[32]

 Appellant additionally contends that the court erred in failing to admit evidence of appellee Northern's agency relationship with appellee Ness. In the only portion of the record which bears upon this allegation, the record reflects that the following transpired during appellant's direct examination of the witness Jack Simpson (Northern's agent):

Q * * * And would it be a correct statement to say then that Mrs. Long's company, that's National Auto and Casualty, was then * * * [Ness']

---

28. AS 21.10.490(a) and (c) (1) require an insurance adjuster to maintain a record of each investigation or adjustment undertaken. Civ.R. 44(a) (1) provides:
 Writings offered as memoranda or records of acts, conditions, or events are admissible as evidence of the facts stated therein if the court finds that they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness. The word 'business' as used herein shall include every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not.

29. 394 P.2d 886, 889–890 (Alaska 1964).

30. Throughout appellant's testimony at trial an interpreter was used.

31. See 3 Wigmore, Evidence § 776, at 133 (3d ed. 1940) ; McCormick, Evidence § 7, at 10 (1954). Civ.R. 43(g) (6) provides:
 On direct examination, leading questions are not allowed except [a] where they are merely formal or preliminary, or [b] where the court, in exercise of its discretion, finds that the interests of justice require it, or [c] as provided in (12) of this subdivision.
 Subdivision (12) of Civ.R. 43(g) provides in part:
 A party may interrogate any unwilling or hostile witness by leading questions.

32. See Mallonee v. Finch, 413 P.2d 159, 164 (Alaska 1966).

insurer for the purposes of that accident?

MR. HUGHES: I object to that * * * as having no probative value here, Your Honor.

\* \* \* \* \* \*

THE COURT: * * * The objection is sustained.

MR. SAVAGE: Your Honor, I'm trying to lay a foundation here. * * [W]e're trying to determine who he's working for * * *.

MR. TALBOT: Well, we'll stipulate that he was working for National Auto as I think he said he was.

MR. SAVAGE: All right, we'll stipulate to that.

MR. HUGHES: No question about it, Your Honor, we'll so stipulate.[33]

Since this is the only segment of the record which has been indicated to us as having any bearing on appellant's contention, we are of the opinion that this argument is without merit. We reach a similar conclusion as to appellant's assertion of error in the exclusion of evidence of his attempted negotiation with appellees in March 1963 (after the statute of limitations had run).[34]

■ We further hold that appellant has not shown that exclusion of certain instructions from appellee Northern's principal to refrain from further negotiations with appellant was error.[35] Unlike the *Nesbitt* case [36] on which appellant relies, negotiations between appellant and Simpson had, in fact, terminated some time before Simpson received these instructions, and there was no evidence that Simpson had in any way violated his principal's instructions.

■ Appellant further contends that the trial court erred in rejecting evidence relating to custom and usage in the adjusters' trade. In Mitchell v. Knight,[37] we said:

It is quite generally the rule that evidence of custom is admissible as bearing on what the community regards as proper and reasonable conduct under the circumstances, although it is not conclusive. Professor Wigmore limits the application of this rule by spelling out two requirements. The first is that the circumstances must be substantially similar. The second is that the evidence of custom may be excluded by the trial court if it feels that the evidence will merely confuse the issues. (Footnotes omitted.)

We believe that the *Mitchell* criteria is controlling and affirm the trial court's decision on the basis that the offered proof as to custom was sufficiently dissimilar under the *Mitchell* test.

■ Appellant's final point is that the trial court committed error by its refusal to admit evidence that Simpson learned that there was additional insurance after he had represented to appellant that there was $10,000 total in insurance.[38] Although it is conceivable that this evidence was admissible, appellant has not persuaded us that the trial court erred in excluding it, or how such exclusion prejudiced appellant's case.

The judgment below is affirmed.

33. The court then informed the jury as to the substance of the stipulation. Helen Long, the owner of the vehicle which Ness was driving, was originally named as a defendant. At trial a dismissal was granted as to her.

34. See Annot., 130 A.L.R. 8, 18–19 (1941), to the effect that an act occurring after the statute of limitations had run cannot form the basis of an estoppel to plead such a statute.

35. Just before objection was made the jury heard testimony from Jack Simpson admitting that he was instructed on January 4, 1963, to, in effect, not negotiate with appellant.

36. 416 Pa. 89, 204 A.2d 473 (1964).

37. 394 P.2d 895 (Alaska 1964).

38. From the record it appears that Simpson acquired this knowledge after negotions had been terminated with appellant.