Frank GARFIELD and Vicki Karrer, Appellants,

v.

Romaine F. CLARK, Appellee.

No. 2867.

Supreme Court of Alaska.

Aug. 19, 1977.

---

John Anthony Smith, Anchorage, for appellants.

Arden E. Page, Burr, Pease & Kurtz, Inc., Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR and BURKE, Justices, and DIMOND, Justice Pro Tem.

## OPINION

RABINOWITZ, Justice.

In June 1972, appellants Garfield and Karrer were passengers in an automobile driven by appellee Clark. Garfield and Karrer were injured in an accident on the Glenn Highway while Clark was driving the automobile. At the time of the accident, appellee Clark was insured by State Farm Mutual Automobile Insurance Company.

On September 29, 1972, State Farm brought an action in the United States District Court for the District of Alaska seeking a declaratory judgment that its insurance policy did not cover Clark's involvement in the accident of June 17. State Farm's complaint named, among others, Clark, Garfield and Karrer as defendants. In July 1973, Clark filed a cross-claim naming, among others, Garfield and Karrer as third-party defendants. The cross-claim sought an adjudication as to Clark's liability for the June 17 accident.

On September 18, 1973, Garfield and Karrer moved to dismiss Clark's cross-claim on the basis that the district court lacked subject matter jurisdiction over the cross-claim. Garfield and Karrer filed a motion for summary judgment in the main action regarding coverage of the insurance policy. The two motions were heard before the court on October 12, 1973. Counsel for State Farm had pointed out in his opposition to the motion for summary judgment that *Graham v. North River Insurance Co.*, 533 P.2d 20 (Alaska 1975), a case then pending before the Alaska Supreme Court, could be dispositive of the coverage issue. At oral argument, Judge von der Heydt announced his intent to stay the main suit pending the resolution of the *Graham* case. The federal court specified that only the coverage aspect of the case was stayed.[1] After hearing argument on the motion to dismiss, the federal court entered a memorandum and order on October 19, 1973, granting appellants' motion to dismiss the cross-claim. On December 20, 1974, Garfield and Karrer filed a motion to vacate the stay.

The state court proceedings began December 19, 1974, when Garfield and Karrer filed a complaint in the superior court of

---

1. The following interchange occurred:

  MR. SMITH [counsel for Garfield and Karrer]: One question for clarification, actually, that stay would be the stay of determination of the policy coverage. I would still like to hear the question of the dismissal of the cross-claim today.

  THE COURT: Yes, I am talking only about that aspect.

the State of Alaska against Clark for the injuries they received in the June 17, 1972, automobile accident. Thereafter, on December 30, 1974, Clark filed a motion for dismissal of the superior court complaint, alleging that the action was barred by the statute of limitations, AS 09.10.070.[2] On March 15, 1976, the superior court granted Clark's motion to dismiss.[3] This appeal followed.

■ In their first specification of error, appellants Garfield and Karrer assert that the superior court erred in finding that Clark had not waived the statute of limitations defense. Appellants essentially contend that the filing of the declaratory judgment action and the cross-claim in federal court constituted a waiver by Clark of the statute of limitations defense. Appellants base this argument on the legal principle that the statute of limitations defense is waived if it is not pleaded and on decisional authority to the effect that the statute of limitations is waived when a counterclaim or cross-claim is asserted.[4] However, both the principle and the decisional authority invoked by Garfield and Karrer deal with situations distinguishable from that presented in the case at bar.

The pleading principle deals with a situation in which a party now seeking to invoke the statute of limitations defense has failed to properly plead the defense. Inherent in this principle is the fact that the statute has run at the time of pleading. In the case at bar, at the time the declaratory action and cross-claim were filed, and even at the time the cross-claim was dismissed, the statute had not yet run. Thus, the pleading rule is clearly inapplicable to the facts of this case.

The decisional authority deals with situations in which a tort claim has been timely filed by one party and another party later attempts to interject in that action another tort claim, arising from the same incident, as a setoff, counterclaim, cross bill or cross action, in a pleading filed after the statute has run.[5] The question presented in these cases is whether the filing of a tort action tolls the running of the statute with respect to actions arising out of the same incident or transaction between the same parties.

Had any of the significant acts in federal court occurred after the running of the statute of limitations, Garfield and Karrer would have had a stronger argument for waiver,[6] however, this was not the case. It was on the motion of Garfield and Karrer that Clark's cross-claim in the federal suit which sought to determine liability was dismissed. After dismissal, Garfield and Karrer had approximately eight months in which to file a state court action against Clark before the running of the applicable two year statute of limitations. We thus are unable to find any merit in appellants' waiver contentions.

In their second specification of error, appellants claim that Clark is estopped from asserting the statute of limitations defense. This argument is based on the pursuit of litigation by Clark and his insurer in the federal court action, and representations that Clark would file voluntary bankruptcy if the federal court determined that the insurance policy did not cover the accident. John Anthony Smith, counsel for Garfield and Karrer, presented an affidavit to the superior court in which he made the following assertions:

2. AS 09.10.070 provides:

   *Actions to be brought in two years.* No person may bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise; (2) upon a statute for a forfeiture or penalty to the state; or (3) upon a liability created by statute, other than a penalty or forfeiture; unless commenced within two years.

3. After the motion to dismiss was filed, appellants served a request for admissions on Clark. Clark objected to the request and a hearing was held September 12, 1975, on the motion to dismiss and the objections to the admissions.

4. *See* Annot., 72 A.L.R.3d 1065 (1976).

5. *Id.* at 1066–67.

6. *Barrett v. Byrnes,* 556 P.2d 1254 (Alaska 1977), represents the appropriate application of the waiver argument.

That on numerous occasions, the attorneys for defendant Romaine Clark, and Romaine Clark himself informed myself and my clients that it was necessary to resolve the coverage question or Romaine Clark would immediately file an involuntary bankruptcy to preclude recovery.

That there were numerous discussions to the effect that Judge von der Heydt should resolve the coverage question before proceeding to litigate the question of liability.

That in reliance on these statements, and the actions of the Defendant and his counsel, plaintiffs awaited the ruling of Judge von der Heydt on the coverage question for an extensive period of time before finally trying to move the case while obtaining a decision from the Judge.

Jeffrey Roth and Kenneth Jensen, counsel for appellee Clark, also submitted affidavits to the superior court. Jensen admitted representing that if a substantial judgment was obtained against Clark he would advise Clark to file a petition for voluntary bankruptcy.[7] However, he maintained:

At no time during the pendency of any action arising out of the accident in litigation in these proceedings have I taken any action on behalf of my client to secure a delay in adjudication of their rights; to stay any proceedings in this court or any other court; to lead opposing counsel to believe that I would acquiesce in any extension of limitations; or to say or do anything which would have the result of causing opposing counsel to believe I would acquiesce in such a delay or extension of limitations.

Of further significance is that portion of the affidavit of Jeffrey Roth in which he states:

During the course of such conversations I have had with opposing counsel in this proceeding, the fact that Romaine Clark is financially unable to respond in damages to a substantial judgment may well have been mentioned by me, but at no time did I suggest or imply to opposing counsel that the impecunious condition of my client should, for any reason, cause a delay in the commencement of prosecution of any proceedings against my client in this court or any other court.[8]

In *Groseth v. Ness*, 421 P.2d 624, 630 (Alaska 1966), we adopted "the doctrine of equitable estoppel as a prohibition against unjust reliance upon a statute of limitations."[9] More recently this court discussed the doctrine of equitable estoppel, as applied to assertion of the statute of limitations defense in *State v. Reefer King Co., Inc.*, 559 P.2d 56 (Alaska 1976).[10]

7. Jensen stated:
Since this matter first arose, I have had several discussions with counsel for plaintiffs concerning this case, and on some of those occasions, I have represented to plaintiffs' counsel that Romaine Clark is without funds to respond to any substantial judgment from his personal estate, and from the very beginning of federal proceedings, I have candidly disclosed to counsel for plaintiffs that a substantial judgment against Romaine Clark would result in my advising my client as to the relative advantage to him and to his wife to commence voluntary bankruptcy proceedings to discharge such an obligation.

8. In support of their estoppel argument, Garfield and Karrer also assert that they were the parties who were actively pursuing the federal court litigation. The record discloses that it was Garfield and Karrer who submitted a motion for summary judgment on the issue of coverage rather than Clark.

9. In *Groseth* we found no evidence from which the jury could have found an estoppel. There we noted:
Of particular significance is the fact that the record is devoid of any evidence that appellant relied upon any false or fraudulent representation or conduct on [defendant's agent's] part, and by virtue of such reliance refrained from obtaining the services of an attorney and from instituting timely suit. In short, the proof developed by appellant did not show that he was led to believe that there would be an equitable settlement of his claim, and because of such relief, resulting from [the agent's] representations and conduct, was 'lulled' beyond the statute of limitations.
*Groseth v. Ness*, 421 P.2d at 631.

10. *See also Demmert v. City of Klawock*, 199 F.2d 32, 14 Alaska 20 (9th Cir. 1952); *Chiei v. Stern*, 561 P.2d 1216 (Alaska 1977).

In *Reefer King*, the state and New Nelco had entered into a stipulation extending the time within which the state was to answer until after this court's determination of *State v. Wakefield Fisheries, Inc.*, 495 P.2d 166 (Alaska 1972). The parties entered into a formal "Stipulation to Hold Proceedings in Abeyance Pending Determination of Similar Cause." We noted:

[Had the state been required to file its answer within the normal time frame] New Nelco would have had an opportunity to pay its corporate taxes and file its annual report and to qualify to commence and maintain its claim prior to the date upon which the defense of the statute of limitations became available to the state.

Under these circumstances, we consider it patently unfair for the state to assert, months after the stipulation was entered into, that New Nelco's claim is barred by the statute of limitations. Accordingly, we hold that such action by the state is prohibited by the doctrine of equitable estoppel, and that the superior court erred in barring the taxpayer's claim for overpayment of taxes in 1965. (footnote omitted)[11]

Since, according to the uncontroverted allegations in the affidavits, Clark made no promises or representations that he would not assert the statute of limitations defense, any equitable estoppel must arise from the continuation of the federal action on the insurance coverage issue and the representations that any judgment obtained, if not covered by insurance, would be met by a petition for voluntary bankruptcy. Garfield and Karrer insist that they were taking the reasonable path by not filing their state court action in reliance on those representations until it was ascertained whether or not a judgment would be enforceable.

Thus, the issue for resolution here is whether this factual situation gives rise to an application of the doctrine of equitable estoppel. In this case there are no allegations that Clark offered Garfield and Karrer a settlement should the coverage issue be adjudicated in his favor. Nor is there evidence of an explicit agreement that the liability litigation not be started until the coverage litigation terminated. Appellants may not have been able to enforce any state court judgment obtained against Clark if the coverage issue was not settled in Clark's favor. Nevertheless, appellants Garfield and Karrer were never "lulled" into a false sense of security by any specific conduct on the part of Clark implying that the statute of limitations would not be raised. We conclude that the superior court did not err in failing to find that appellee Clark was estopped from asserting the statute of limitations defense. What is lacking is the requisite evidentiary basis for invocation of the doctrine of equitable estoppel.[12]

11. *State v. Reefer King Co., Inc.*, 559 P.2d 56, 63–64 (Alaska 1976).

12. We think there is merit in appellee Clark's factual analysis of the estoppel issue and that it supports the resolution we have reached as to that issue. In his brief appellee points out the following factors:

1. Appellants were, at all times relevant to this litigation, represented by an attorney.

2. No suggestion has been made at any point in these proceedings, that an express request by any party was ever made to Appellants to defer the filing of their personal injury action.

3. No negotiations toward compromise of Appellants' claims or suggestion that Appellants' claims would be paid short of judgment has ever been raised.

4. Appellee attempted to secure adjudication of the issues present in this case in the course of the declaratory judgment action but was successfully thwarted in this attempt by Appellants.

5. The record demonstrates that the subject of a stay of proceedings in the declaratory judgment action was raised by the Judge, that counsel for Appellants acknowledged his lack of knowledge of the position of Appellee's insurance carrier on the matter, and that the declaratory judgment aspect of the action was the only matter affected by the stay of proceedings.

6. The bankruptcy of Appellee would not affect the rights or obligations of Appellee's insurance carrier.

7. No event, other than the inferable discovery by counsel for Appellants that the applicable statute of limitations had lapsed, would explain the commencement of this action on December 20, 1974, three months prior to the Alaska Supreme Court's decision in the case of *Graham v. North River Insurance Company*.

In their last specification of error, Garfield and Karrer contend that the superior court should not have dismissed their complaint because there were factual issues concerning the estoppel defense which should have been left for the jury.[13] In the request for admissions to which Clark filed an objection on the ground of relevancy, appellants sought admissions that (1) Clark had said that if the coverage issue was resolved against him, he would file a voluntary bankruptcy petition; (2) Jensen, Clark's attorney, made a similar representation; (3) Jeffrey Roth made a similar representation; (4) Clark told appellants that a bankruptcy petition had already been prepared; (5) Clark and/or his attorneys told appellants "that the litigation in the United States District Court for the District of Alaska determining coverage must proceed to a determination first as Romaine F. Clark has no assets to pay even his own attorney's fees"; (6) Jensen or Roth complained that they were not going to get paid for their services in the insurer's action. Of these requested admissions, only No. 5 appears relevant on the estoppel issue, since that is the only one which reasonably might have allowed Garfield and Karrer to be lulled into a false sense of security that the statute of limitations defense would not be asserted. Given the affidavits of respective counsel to which we have previously alluded, we have concluded that it was not error for the court to have determined the dismissal motion without compelling Clark to first answer the subject request for admissions. We are of the view that even if request for admission No. 5 was admitted such an admission in itself would not furnish the basis for assertion of an equitable estoppel defense.

Affirmed.

BOOCHEVER, Chief Justice, with whom CONNOR, Justice, joins, dissenting.

Although I find it a very close question, I believe that a factual issue was properly raised as to whether Clark is estopped from relying on the statute of limitations, and I therefore am of the opinion that it was error for the trial court to dismiss the complaint without a hearing on that issue. My position is based on the fact that litigation was proceeding in the United States District Court, and that counsel for Garfield and Karrer stated in his affidavit that there were numerous discussions with Clark and opposing counsel to the effect that the United States District Court should resolve the coverage question before proceeding to litigate the question of liability. This would seem to me to raise an issue as to whether there was an implied waiver of the statute of limitations until such time as the United States court had decided the coverage question.[1] I also believe that discovery should be permitted before determination of the estoppel issue.

---

13. In their brief, they maintain that they requested the trial court to compel discovery on this issue. The only attempt at discovery which is a part of the record is a request for admissions.

1. *See State v. Reefer King Co., Inc.,* 559 P.2d 56 (1976); *Fitzgerald v. Neves,* 15 Wash.App. 421, 550 P.2d 52 (1976); *Freeman v. Wilson,* 107 Ariz. 271, 485 P.2d 1161 (1971); *Bagley v. Hotel Florence Co.,* 526 P.2d 1372 (Mont. 1974).