485 P.2d 1161

Edith I. FREEMAN, Executrix of the Estate of Willis E. Freeman, Deceased, Appellant,

v.

W. Francis WILSON and Jane Doe Wilson, his wife, Appellees.

No. 10329.

Supreme Court of Arizona, In Division.

June 18, 1971.

Mackenzie, Bolze & Hirsch, by Albert H. Mackenzie, Phoenix, for appellant.

W. Francis Wilson, Phoenix, for appellees.

UDALL, Justice:

This is an appeal from a judgment in the Superior Court of Maricopa County in favor of defendant-appellee, W. Francis Wilson, in an action brought by plaintiff-appellant, Mrs. Edith I. Freeman, individually and as executrix of the estate of Willis. E. Freeman, to recover: (1) $6,-938.06, with interest, costs incurred, plus reasonable attorney's fees based on two promissory notes executed by defendant in March, and June, 1958; and (2) money owed the Freemans arising from an alleged oral agreement entered into between defendant and the Freemans in April, 1959. Suit was commenced on September 9, 1966. The action, tried before the court without a jury, resulted in a verdict in favor of defendant, Wilson. The basis for this judgment was the trial judge's determination that action on the promissory notes was barred by the six-year limitation's period for debts evidenced by or founded on a contract in writing. The court held that acknowledgments, in the form of letters written by Mr. Wilson after the statute of limitations had run, were legally insufficient to revive action on the notes and start the period running anew. Relative to the purported oral agreement no specific finding was made. The trial judge's reference to the oral agreement does indicate, however, that he believed it to be unenforceable by virtue of the statute of fraud's provision (A.R.S. § 44–101, subsection 2) requiring a writing signed by the party to be charged where the agreement is based upon a promise to answer for the debt, default or miscarriage of another.

Having reviewed the testimony and evidence presented to the trial court we find the judgment of the trial court, relative to the action on the promissory notes, to be in error. Evidence presented, in the form of letters written by defendant, was sufficient to remove the limitation's bar and to revive plaintiff's action on the promissory notes.

Relative to the oral agreement we find it to be unenforceable by virtue of the three year limitation's period for contracts not evidenced by or founded upon a writing. A.R.S. § 12–543.

The facts necessary for a determination of this case are as follows: On November 13, 1953, Francis Wilson, on behalf of his client Consolidated Western Steel, a division of United States Steel, instituted suit against Willis and Edith Freeman on a promissory note made payable by them to Consolidated Western Steel. The Freemans defaulted and judgment, in the amount of $3,296.29, was taken against them. On April 29, 1954, there was recorded a mortgage in the Maricopa County Recorder's office from the Merrills, as mortgagors, to Willis and Edith Freeman, as mortgagees, in the principal amount of $14,278.72. The Merrill-Freeman note and mortgage were assigned to Consolidated Western Steel as security for payment of the default judgment. When this judgment was later satisfied, Consolidated Western Steel, on March 12, 1958, reassigned to the Freemans their note and mortgage.

Wilson was then retained by the Freemans to collect on the Merrill-Freeman note and mortgage. He obtained two sums of money in satisfaction of the debt and instead of turning the money collected over to the Freemans, an agreement was reached whereby Wilson borrowed the money, agreeing to advance money to the Freemans as needed. The notes, set forth below, were given to the Freemans on the dates on which Wilson collected money from the Merrills.

"PROMISSORY NOTE

Phoenix, Arizona

$5,140.85                    March 18, 1958

ON DEMAND after date, for value received, I promise to pay to Willis E. Freeman or Edith T. Freeman, his wife, or order, the sum of Five Thousand One Hundred Forty and 85/100 ($5,140.85)

Dollars, with interest thereon at the rate of six (6%) per cent per annum from date until paid.

Should suit be brought to recover on this note, or should this note be turned over to an attorney for collection, I promise to pay, in addition to the amount found due on said note, an additional sum as attorney's fees equal to a reasonable amount.

(Signed)   W. FRANCIS WILSON"

"PROMISSORY NOTE

Phoenix, Arizona

$7,225.28          June 1, 1958

ON DEMAND, after date, for value received, I promise to pay to WILLIS E. FREEMAN or EDITH I. FREEMAN, his wife, or order, the sum of Seven Thousand Two Hundred Twenty-Five and 28/100ths ($7,225.28) Dollars, with interest thereon at the rate of six (6%) per cent per annum from date until paid.

"Should suit be brought to recover on this note, or should this note be turned over to an attorney for collection, I promise to pay, in addition to the amount found due on said note, an additional sum as attorney's fees equal to a reasonable amount.

(Signed)   W. FRANCIS WILSON"

During the years immediately following the loan to Wilson, monthly payments were fairly regular, but with the passage of time became increasingly sporadic and eventually ceased altogether. Demands for payment followed, promises were made and excuses given, all proving to be empty words. Mrs. Freeman testified as follows:

"Q. (By Mr. Mackenzie) Did you ever inquire of Mr. Wilson that he pay you the full balance due on those promissory notes?

"A. I did.

"Q. Do you remember approximately when you made it and where?

"A. At the house.

"Q. At your house?

"A. Yes.

"Q. Do you remember approximately when and who was present.

"A. Just my husband and I.

"Q. Now, did you make the full demand in the presence of your husband?

"A. Yes.

"Q. Well when was that, approximately?

"A. Approximately in 1961.

"Q. I see, and what did he say to that?

"A. He said—

"Q. Mr. Wilson, I mean?

"A. He was trying to fix it up.

"Q. He what?

"A. He would try and fix it up.

"Q. He'd try and fix it up?

"A. Yes.

"Q. Did he go on with any explanation?

"MR. WILSON: Objection, Your Honor.

"THE COURT: He hasn't completed his question yet, you may proceed.

"Q. (By Mr. Mackenzie) Was there any further discussion about what was meant by Mr. Wilson as to how he would fix it up?

"A. Mr. Wilson told me and my husband that he was in the process of selling a hotel and that he would pay the amount in full in three weeks." [R.T., Vol. II at 87–88]

Following Mr. Freeman's death in December, 1964, Mrs. Freeman, finding herself in greater financial need, pressed Wilson for payment:

"Q. (By Mr. Mackenzie) I will go back.

"While Mr. Wilson was still your counsel as Executrix, still your attorney as Executrix of the estate, did you have a discussion with him about the accounting on the notes?

"A. Yes, I asked him for an accounting.

"Q. You asked him what?

"A. I asked him for an accounting.

"Q. And what did he say?

"A. He said he'd have his secretary prepare one.

"Q. He would have his secretary prepare one, did his secretary ever prepare one—strike that. Did you ever receive such an accounting from Mr. Wilson's secretary or anybody else?

"A. I did not.

"Q. To this day?

"A. To this day." [R.T., Vol. II at 97]

In desperation Mrs. Freeman consulted an attorney. In response to several letters written to Wilson by plaintiff's attorney requesting payment the following letters, claimed by plaintiff to constitute acknowledgments sufficient to revive the barred action, were written in reply thereto:

"Sept. 27, 1965

Albert H. Mackenzie
Attorney at Law
222 North Central Avenue
Phoenix, Arizona 85004

Dear Mac:

I meant to come to see you when I got your first letter about the *Freeman money*. I've never been so overrun in my life and hope you won't think I've ignored you.

I can't pay this money in a lump sum. No one ever expected me to. Willis E. Freeman and I were the *closest friends* for many years, hence the 'demand note.' He *loaned me* the *money* for use in developing my ranch in Harquahala Valley and *he used it as his nest egg*, taking monthly payments and at first when he was younger and well he used more of it after the first bit which got him on his feet. There were also other considerations in my having the money.

*I can pay it* by the month as he wanted and expected me to. Mrs. Freeman imagined a while back that the mortgage on the house had to be paid in order to sell the house. I told her it was just the opposite. I will appreciate it if we can work out something. I'm in a murder trial hence the letter instead of a visit. Phone me after 5:00 p. m. if you can.

Best regards,   Very truly yours,

[Signed]   W. FRANCIS WILSON"

"November 16, 1965

Albert H. Mackenzie
Attorney at Law
1104 Union Title Bldg.
222 N. Central Avenue
Phoenix, Arizona 85003

Dear Albert:

I am sorry to confirm my telephone conversation that I am unable to give you $500.00 on the *Freeman matter* at the present time, but *expect to be able to do so* by the 1st of the month and to be able to comply with any reasonable demand thereafter. Thanking you for your many kindnesses, I am

Very truly yours,

[Signed]   W. FRANCIS WILSON"

## ACTION ON THE PROMISSORY NOTES

The law on acknowledgments as reviving an action which has been barred by a statute of limitations is codified in A.R.S. § 12–508, wherein it is provided that when suit has been barred by limitation no acknowledgment of the justness of the claim, made subsequent to the time it became due, shall be admitted into evidence to take the action out of the operation of the law unless such acknowledgment is in writing and signed by the party to be charged.

▮▮▮ For an acknowledgment of an indebtedness to effectively remove the bar of the limitation's period the acknowledgment must be in writing; it must be signed by the party to be charged; it must sufficiently identify the obligation referred to, though it need not specify the exact amount or nature of the debt; it must contain a

promise, express or implied, to pay the indebtedness; and it must contain, directly or impliedly, an expression by the debtor of the "justness" of the debt. "Justness", as used here, refers to the moral obligation which the debtor feels rests upon himself to repay the original obligation. The "justness" of a debt may be express or it may be implied from the words used in acknowledging the debt. John W. Masury & Son v. Bisbee Lumber Co., 49 Ariz. 443, 68 P.2d 679 (1937). Where a debtor acknowledges the "justness" of the debt and expresses a willingness to repay the obligation the law will imply from the acknowledgment a promise to pay the entire obligation, In Re Tolleson's Estate, 64 Ariz. 80, 166 P.2d 146 (1946); and no precise form of words need be used to constitute a legally sufficient acknowledgment.

We have here, in the form of letters written by Mr. Wilson, writings signed by the party to be charged. In the letter dated September 27, 1965, defendant refers to the subsisting indebtedness as the "Freeman money." This reference is sufficient specification of the money owed on the promissory notes. The fact that the amount is not specified is of no consequence where the amount can easily be ascertained once the debt is identified. It is generally said that where there are several debts and it cannot be determined from the acknowledgment relied upon, which debt is referred to, the acknowledgment would be insufficient. That the letters referred to the money owed on the promissory notes is beyond dispute; defendant himself has not argued differently.

Although defendant has not expressly promised to repay the indebtedness, where an acknowledgment discloses that the writer treats the indebtedness as subsisting and contains an expression of willingness to pay, as well as directly or impliedly an expression by the writer that a moral obligation rests upon him to pay the original debt, the acknowledgment will be sufficient not only as to the justness of the claim but also as a promise to pay the debt. In Re Tolleson's Estate, supra. That defendant considered himself under a moral obligation to repay his indebtedness is evidenced by his statements that he and Willis Freeman were the "closest friends for many years," and that the money loaned to him was to be Freeman's "nest egg." Clearly, defendant's letters, written after the limitation's period had run, disclose that he considered the indebtedness as subsisting, felt a moral obligation to repay it and expressed a willingness to repay it. We find defendant's letters constitute a legally sufficient acknowledgment of the indebtedness, thereby removing the bar of the statute of limitations.

In accordance with the foregoing the judgment of the trial court, in regard to enforceability of the indebtedness based on the promissory notes, is hereby reversed. Plaintiff is entitled to judgment on the promissory notes.

## ACTION ON THE ORAL AGREEMENT

While the trial judge erroneously believed plaintiff's cause of action to be unenforceable by virtue of the statute of frauds, we find his ultimate conclusion to be correct, since the purported oral agreement proves itself to be unenforceable by reason of A.R.S. § 12–543, which provides that

"There shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions:

1. For debt where the indebtedness is not evidenced by a contract in writing."

The oral agreement was allegedly entered into in April, 1959. Defendant denies having entered into any such agreement and the evidence presented in support thereof is, at best, vague and uncertain. Under § 12–543(1), supra, plaintiff's action on the purported oral agreement was barred with the expiration of the three year limitation's period in April, 1962. The doctrine of estoppel in pais, See Holmes v. Graves, 83 Ariz. 174, 318 P.2d 354 (1957); Munger

v. Boardman, 53 Ariz. 271, 88 P.2d 536 (1939), is inapplicable to the oral agreement since the partial payments and promises made by defendant related solely to monies due on the promissory notes. Defendant has made no payments on the alleged oral agreement; nor does the record reveal that defendant at any time promised to pay the amounts allegedly due on the oral agreement. To invoke an estoppel against an adverse party's plea of limitations, a person must reasonably have relied to his detriment on the acts, promises or representations of the adverse party. Since no acts, representations or promises were made relative to the oral agreement, the doctrine of estoppel cannot be applied. Detrimental reliance is an essential ingredient of estoppel, without which there can be no estoppel.

It should be noted that plaintiff's cause on the oral contract became barred in April, 1962, three years after the cause of action accrued. This suit, however, was not commenced until September 9, 1966, four years after plaintiff's action had been barred. This, in itself, is an unreasonably long period of time to wait before instituting suit.

As stated hereinbefore, plaintiff is entitled to recover $6,938.06, with interest at 6% per annum from December 31, 1967, until paid, costs herein incurred, plus attorney's fees in a reasonable amount; stemming from defendant's indebtedness on the promissory notes. With regard to the oral agreement we find it to be unenforceable and, therefore, the judgment of the trial court, although based upon a wrong premise but correct in result, is hereby affirmed.

Reversed in part; affirmed in part.

STRUCKMEYER, C. J., and HAYS, V. C. J., concur.