MIDSTATES RESOURCES CORP., Plaintiff,

v.

FARMERS AERIAL SPRAYING SERVICE, INC., a/k/a Farmers Aerial Spraying, a/k/a Farmer Aerial Spraying, Inc.; Kenneth D. Russell; and Sherry A. Russell, Defendants.

Civil A. No. 5:95–CV–043–C.

United States District Court, N.D. Texas, Lubbock Division.

Feb. 9, 1996.

Roger S. Cox and Franklin Scott Flow, Amarillo, TX, for plaintiff.

Larry Wayne McEachern, Lubbock, TX, for defendants.

### *OPINION*

CUMMINGS, District Judge.

Plaintiff Midstates Resources Corp. ("Midstates") has sued defendants Farmers Aerial Spraying Services, Inc., a/k/a Farmers Aerial Spraying, a/k/a Farmer Aerial Spraying, Inc. ("FASS"), Kenneth D. Russell, and Sherry Russell to recover on certain defaulted notes, security agreements, and guaranties. The defendants admit that they both made and defaulted on these obligations. Defendants' sole defense to this suit is limitations. As all material facts are undisputed, both Midstates and defendants as a group have each moved for summary judgment. This opinion disposes of both motions.

Defendants' limitations defense rests on two issues that the Court must decide. The first issue is whether 12 U.S.C. § 1821(d)(14) superseded and nullified a provision of 28 U.S.C. § 2415(a). The provision in question causes the accrual of contract actions' limitations periods to restart when debtors acknowledge or partially pay debts otherwise barred by limitations.[1] The Court finds that section 1821 did not supersede this provision. The second issue the Court must decide is whether the defendants acknowledged their debts sufficiently to restart the running of the expired limitations periods barring actions on the debts. The Court finds that the defendants did sufficiently acknowledge their debts to restart the limitations period.

### I. FACTS

The material facts of this case are undisputed.[2] In 1987, FASS executed three promissory notes payable to First State Bank of

---

1. All parties admit that the original limitations periods have run on the notes and guaranties. The parties dispute whether limitations had run on the security agreements. The Court does not need to decide whether the original limitations periods have run on the securities agreements, however, since the analysis that is to follow would restart these periods running.

2. The stipulated list of facts is attached and labeled "Appendix."

Bovina. Security agreements collateralized each note, and Kenneth Russell and Sherry Russell also individually guaranteed the notes. As the details of these obligations are undisputed, the Court will not recite them here. The details may be found in the appendix to this opinion.

In October of 1987, First State Bank of Bovina was declared insolvent. FDIC Receiver was appointed receiver of the bank. FDIC Receiver subsequently assigned, transferred, and conveyed the notes to FDIC Corporate. FDIC Corporate in turn assigned, transferred, and conveyed the notes to Midstates Resources Corp.

Defendants defaulted on all of their obligations. The original limitations periods for all of the debts had run by the date Midstates filed suit. However, in February of 1992, Larry McEachern contacted the FDIC by letter on behalf of all defendants. *Stipulated Facts* ¶ 48. This letter is important, because it restarted the limitations periods running again, which is one of the chief issues in this case.

## II. STATUTES

■ The first issue raised by the parties concerns the relationship between two limitations statutes, each of which ostensibly applies to Midstates's contract actions. The first statute is 28 U.S.C. § 2415(a), which broadly purports to apply to every contract action brought by the United States, including the FDIC and its assignees. *FDIC v. Bledsoe*, 989 F.2d 805, 810–11 (5th Cir.1993). This statute was promulgated in 1966 and places a six-year limitations period on covered contract actions. The second statute is 12 U.S.C. § 1821(d)(14), which also applies to contract actions brought by the FDIC or its assignees. *Id.* This statute was promulgated in 1989 and was intended to clarify exactly when the six-year limitations period applicable to contract actions begins to run, *Jackson v. Thweatt*, 883 S.W.2d 171, 177 n. 7 (Tex. 1994), an issue which had become a point of conflict among the federal circuits. *Jackson*, 883 S.W.2d at 173 n. 3. Both parties admit

that 1821(d)(14) controls the date on which the limitations period begins to run.

The parties' disagreement pertains to the applicability of a provision in section 2415(a) which restarts the accrual of otherwise expired limitations periods on contract claims when breaching parties either acknowledge or partially pay their debts. Section 1821(d)(14) has no such provision. Midstates argues that since section 2415(a)'s provision does not contradict the later-enacted section 1821(d)(14), the provision is applicable. Defendants argue that section 1821(d)(14) wholly supersedes section 2415(a), and, accordingly, none of section 2415(a)'s provisions apply to matters covered by section 1821(d)(14). The parties have not identified, and the Court could not find, any cases directly addressing this issue. Consequently, the Court will treat this issue as one of first impression.[3]

This issue is one of statutory construction. Two statutes, one broad (section 2415(a)) and one narrow (section 1821(d)(14)), each purport to cover the instant transaction. The general issue is whether the later-promulgated narrow statute, 12 U.S.C. § 1821(d), was intended to completely replace the formerly promulgated broad statute, 28 U.S.C. § 2415. If section 1821(d) were intended to completely replace section 2415(a), then section 2415(a) has no application to matters covered by section 1821(d)(14). If section 1821 were not intended to wholly supersede section 2415, then section 1821(d)(14) should be read harmoniously with the broad statute when possible.

■ While no court has directly decided whether section 2415's acknowledgment provision applies to matters also covered by section 1821(d)(14), the Fifth Circuit has explained that section 1821(d)(14) controls only when one of its specific statutory "rules" conflicts with one of section 2415's general statutory rules. *Resolution Trust Corp. v. Seale*, 13 F.3d 850, 854 (5th Cir.1994). The *Seale* court was careful to use the word "rule" instead of statute. One statute can contain many rules. Therefore, "rules" indi-

---

**3.** At least one commentator has anticipated this issue. *See* Roger Cox, *Bankruptcy & Creditors' Rights*, 48 SMU L.Rev. 875, 908 (1995).

cate the narrow principles contained within a statute as opposed to a statute as a whole. In other words, the *Seale* court concluded that section 1821(d)(14) did not completely supersede section 2415(a). The Texas Supreme Court reached this same conclusion. *Jackson v. Thweatt*, 883 S.W.2d 171, 177 (Tex.1994) (explaining that Section 1821(d)(14) does "not create an entirely new limitations scheme, but rather merely clarifies and amends existing law under 28 U.S.C. § 2415(a)").

Section 2415's acknowledgment provision does not conflict with any provision of section 1821(d)(14). Consequently, the Court holds that 2415's acknowledgment provision applies to matters also covered by section 1821(d)(14). Since the acknowledgment provision applies, the Court must now turn to the summary judgment evidence and determine if, as a matter of law, defendants acknowledged their debts in a way sufficient to restart the limitations period under section 2415(a).

### III. ACKNOWLEDGMENT

■ Section 2415 provides that a limitations period will begin running anew if the debtor sufficiently acknowledges or partially pays his debt. 28 U.S.C. § 2415(a). Midstates alleges that five pieces of evidence support the restarting of the limitations periods for defendants' debts. The Court considers one piece of evidence, the Settlement Letter from McEachern, to be an acknowledgment sufficient to restart the running of the limitations period. As this evidence is dispositive, it will be the only piece of evidence discussed.[4]

■ Accordingly, the Court turns its attention first to the law of acknowledgment. An acknowledgment is sufficient under section 2415(a) to restart the running of a limitations period when the debtor both recognizes and promises to pay the debt. A promise to pay does not have to be explicit. The Second Circuit identified one way in which a party can imply a promise to pay: "It is very generally held that an acknowledgment that a sum of money is actually due, if made without any accompanying denial of

willingness, justifies the inference of a promise to pay." *U.S. v. Blusal Meats*, 817 F.2d 1007 (2d Cir.1987) (citing 1A A. Corbin *Corbin on Contracts* § 216 (1963)).

■ With this law in mind, the Court must now turn its attention to the facts at hand. All material facts are undisputed. When no underlying facts are disputed, the sufficiency of a letter's acknowledgment of a debt to restart a limitations period running is a question of law for the court to decide. *See Forry v. Department of Natural Resources,* 889 S.W.2d 838, 843 (Mo.Ct.App.1994); *Williams v. Markt,* 742 S.W.2d 577, 579 (Mo. Ct.App.1987); *McFadin v. Haggard,* 398 S.W.2d 638, 640 (Tex.Civ.App.—San Antonio, 1966, no writ); *Friedman v. Worthy Fabrics,* 347 S.W.2d 639, 640–41 (Tex.Civ.App.—El Paso 1960, no writ). In any event, this case is set for a bench trial, and the Court is the proper entity to make this determination.

This letter is a request that the FDIC begin settlement negotiations concerning the debts owed by FASS. The parties stipulate that Larry McEachern was a duly authorized agent representing all defendants. The letter states that the debts are outstanding, which the Court holds is a sufficient acknowledgment of the debts. *See U.S. v. Culver,* 958 F.2d 39, 41 (4th Cir.1991) (correspondence requesting a compromise on a debt was an acknowledgment of the debt); *Federal Deposit Ins. Corp. v. Cardona,* 723 F.2d 132, 137 (1st Cir.1983) (listing a debt on an estate tax return was a sufficient acknowledgment). The letter does not express an unwillingness to pay the debts, and the absence of such an expression justifies an inference of a promise to pay. *U.S. v. Blusal Meats,* 817 F.2d 1007, 1010 (2d Cir.1987). The letter does express an inability to pay, but this does not constitute an unwillingness to pay. *See U.S. v. Culver,* 958 F.2d 39, 41 (4th Cir.1991). The Court holds that the letter restarted all relevant limitations periods running, and consequently, the suit is not time-barred.

Consequently, the Court GRANTS Midstates's summary judgment.

SO ORDERED.

---

4. The Court notes that Note 2 is alternatively          revived by the partial payments made for it.

**1428**

The following stipulations are made by all parties to this proceeding as follows:

1. On or about April 21, 1987, for good and valuable consideration, FASS executed and delivered Note No. 1 to First State Bank of Bovina ("the Bank"). According to its terms, Note No. 1 matured on October 21, 1987.

2. In executing and delivering Note No. 1 to the Bank, FASS promised and agreed to pay the Bank or its assigns the principal sum of $25,200.00 plus interest and other sums as provided in Note No. 1.

3. On or about September 29, 1987, for good and valuable consideration, FASS executed and delivered Note No. 2 to the Bank. According to its terms, Note No. 2 matured on October 29, 1987.

4. In executing and delivering Note No. 2 to the Bank, FASS promised and agreed to pay the Bank or its assigns the principal sum of $70,000.00 plus interest and other sums as provided in Note No. 2.

5. On or about July 24, 1987, for good and valuable consideration, FASS executed and delivered Note No. 3 to the Bank. According to its terms, Note No. 3 matured on December 15, 1987.

6. In executing and delivering Note No. 3 to the Bank, FASS promised and agreed to pay the Bank or its assigns the principal sum of $20,000.00 plus interest and other sums as provided in Note No. 3.

7. To secure FASS' indebtedness to the Bank, FASS executed and delivered Security Agreement No. 1 to the Bank, granting the Bank and its assigns a security interest in and to certain personal property described therein ("the Collateral").

8. On or about June 6, 1981, Kenneth D. Russell and Sherry A. Russell executed and delivered the Guaranty to the Bank.

9. To secure the indebtedness evidenced by Note No. 3, FASS granted the Bank a security interest in and to the Aircraft, as reflected by Note No. 3 and Security Agreement No. 2.

10. On October 22, 1987, the Bank was declared insolvent by the office of the Comptroller of the Currency, and FDIC Receiver was appointed as receiver of the Bank on that date. FDIC Receiver assigned, transferred, and conveyed the Notes to FDIC Corporate. FDIC Corporate assigned, transferred, and endorsed the Notes to Midstates, and transferred and assigned all of its right, title, and interest in and to the Collateral and the Aircraft, and all other documents evidencing the loan or any security therefor (including the Guaranty) to Midstates.

11. Midstates is and remains, the owner and holder of each of the Notes; it is the owner of the underlying indebtedness and all liens and security interests securing the indebtedness evidenced by the Notes; and it is the owner or beneficiary of the Guaranty.

12. On or about September 20, 1988, FASS made a partial payment of $21,500.00, which payment was duly and properly applied to the sums due and payable under Note No. 1, leaving an unpaid outstanding principal balance of $7,642.40.

13. The outstanding principal balance of Note No. 1 is $7,642.40. Since September 20, 1988, interest has accrued on this outstanding principal balance at a rate of 11.00 percent per annum or $2.30 per day.

14. The debt described in the Complaint and Note No. 1 has not been paid in full by the Defendants or anyone else on the Defendants' behalf.

15. The debt due on Note No. 1 has not been paid to Plaintiff.

16. The Defendants have failed to perform all of the covenants and conditions set forth in Note No. 1.

17. All just credits, offsets, and other amounts, if any, have been applied to the sums due and owing under Note No. 1.

18. On or about January 30, 1989, and May 23, 1990, FASS made partial payments of $1,600.00 and $500.00, respectively, which payments were duly and properly applied to the sums due and payable under Note No. 2, leaving an unpaid outstanding principal balance of $70,000.00.

19. The outstanding principal balance of Note No. 2 is $70,000.00. Since January 1, 1988, interest has accrued on this outstanding principal balance at a rate of 11.75 percent per annum or $22.53 per day.

20. The debt described in the Complaint and Note No. 2 has not been paid in full by the Defendants or anyone else on the Defendants' behalf.

21. The debt due on Note No. 2 has not been paid to Plaintiff.

22. The Defendants have failed to perform all of the covenants and conditions set forth in Note No. 2.

23. All just credits, offsets, and other amounts, if any, have been applied to the sums due and owing on Note No. 2.

24. The outstanding principal balance of Note No. 3 is $20,000.00. Prior to maturity, Note No. 3 accrued interest at the rate of 11.00 percent per annum or $6.02 per day. Interest accrued at that rate from July 24, 1987, until December 15, 1987 (maturity). Since maturity (December 15, 1987), interest has and continues to accrue at the rate of 18.00 percent per annum or $9.86 per day.

25. The debt described in the Complaint and Note No. 3 has not been paid in full by the Defendants or anyone else on the Defendants' behalf.

26. The debt due on Note No. 3 has not been paid to Plaintiff.

27. The Defendants have failed to perform all of the covenants and conditions set forth in Note No. 3.

28. All just credits, offsets, and other amounts, if any, have been applied to the sums due and owing on Note No. 3.

29. Midstates has made demand on FASS, Kenneth D. Russell, and Sherry A. Russell to pay the amounts due and owing on the Notes.

30. Except as stated below, Midstates has a valid and subsisting security interest in and to that certain personal property and equipment described in Security Agreement No. 1 and the Aircraft and equipment as described in Note No. 3 and/or Security Agreement No. 2.

31. Kenneth D. Russell was authorized and directed by FASS to execute and deliver to the Bank each of the Notes and each of the Security Agreements, all as the valid and binding act of FASS.

32. The signature appearing to be that of Kenneth D. Russell on each of the Notes and the Security Agreements is in fact the true, genuine, and actual signature of Kenneth D. Russell.

33. At the time he executed each of the Notes and the Security Agreements, Kenneth D. Russell was the president and a director of FASS.

34. FASS has defaulted in its monetary obligations under each of the Notes.

35. FASS sent the Russell letter to the FDIC on or about March 13, 1989.

36. The genuine signature of Kenneth D. Russell is set forth on the Russell letter.

37. Kenneth D. Russell was an authorized agent or representative of FASS at the time the Russell letter was executed and mailed to the FDIC.

38. Kenneth D. Russell was authorized to execute and mail the Russell letter on behalf of FASS.

39. Kenneth D. Russell was acting on behalf of FASS when he executed and delivered the Russell letter to the FDIC.

40. Larry McEachern was authorized and/or directed by FASS to execute and mail the McEachern letter to the FDIC.

41. For the purposes of the McEachern letter and its subject matter, Larry McEachern was acting as an authorized attorney and agent of FASS, Kenneth D. Russell, and Sherry A. Russell.

42. Midstates has a valid and subsisting security interest in and to a 1974 Dugan Flat S/T trailer, Identification No. JD7411152, which is in the Defendants' possession.

43. Midstates has a valid and subsisting security interest in and to one 1944 Fruehauf Flat S/T trailer, Identification No. 921631, which is in the Defendants' possession.

44. Midstates has a valid and subsisting security interest in and to one 1961 Chevrolet TRK TR, Identification No. 1C823S133964, which is in the Defendants' possession.

45. Midstates has a valid and subsisting security interest in and to the Aircraft, which is in the Defendants' possession.

46. Ken Russell, Pres. is one and the same person as Kenneth D. Russell.

47. FASS violated the terms and conditions of Security Agreement No. 1.

48. Midstates has a valid and subsisting security interest in and to the property described in Security Agreement No. 1.

49. FASS violated the terms and conditions of Security Agreement No. 2.

50. Save and except for the 1978 Chevrolet pickup, VIN DDL448A149857, the 1977 Ford Bronco, VIN U15GL001258, and a 1979 Citabria N5060L, FASS is and remains in possession of some or all of the property described in the Security Agreements.

51. On or after May 2, 1990, FASS made a partial payment of $500.00 on Note No. 2, as evidenced by Check No. 79881.