970 P.2d 958

**PNL ASSET MANAGEMENT COMPANY, LLC, Successor-in-interest to the Federal Deposit Insurance Corporation, Manager of the FSLIC Resolution Fund, receiver of Liberty Federal Savings Bank, Plaintiff–Appellant,**

v.

**BRENDGEN & TAYLOR PARTNERSHIP, a Texas general partnership; Harry L Brendgen, a single man; Thomas W. Taylor and Mary Anna Taylor, husband and wife; the Unknown Heirs and Devisees of one or more of the foregoing-named defendants; Spartan Technologies, Inc., a Texas corporation; Pacer Building Systems, Inc., a Texas corporation, Defendants–Appellees.**

No. 1 CA–CV 98–0101.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 29, 1998.

As Amended Jan. 5 and March 2, 1999.

Law Office of S. Cary Forrester by S. Cary Forrester, Phoenix, for Plaintiff–Appellant.

Frazer, Ryan, Goldberg & Hunter L.L.P. by Raymond M. Hunter and Jeffrey P. Hubbard, Phoenix, for Defendants–Appellees.

## OPINION

GERBER, Judge.

¶ 1 PNL Asset Management Company, LLC (PNL) appeals from summary judgment granted to Brendgen & Taylor *et al* (B & T for partnership) in an action to foreclose on a deed of trust and to recover on the underlying promissory note and guaranty. This court has jurisdiction under Arizona Revised Statutes Annotated ("A.R.S") section 12–2101(B)(1994). For the reasons that follow, we reverse the summary judgment of the trial court and grant summary judgment to PNL.

## ISSUES

1. Did the trial court err when it determined that no genuine issues of material fact existed and that the statute of limitations barred PNL's claims as a matter of law?
2. Are the guarantors liable for the debt if acts of the debtors restart the statute of limitations?
3. Do acknowledgments and partial payments restart the statute of limitations on PNL's right to foreclose on the deed of trust?

## FACTUAL BACKGROUND

¶ 2 In December 1986, B & T executed a promissory note in the face amount of $750,-000, in favor of Southern Bankers Mortgage Corporation and secured the note with a deed of trust against real property that it owned in Coconino County, Arizona. As additional security, Harry Brendgen (Brendgen) and Thomas Taylor (Taylor), the general partners of B & T, together with Taylor's wife, Marie Anna Taylor, and the corporations solely owned by Brendgen and Taylor, respectively Spartan Technologies, Inc. (Spartan) and Pacer Building Systems, Inc. (Pacer), all guaranteed the note. Mrs. Taylor also signed a document authorizing her husband to act as her agent in connection with the business of B & T and further stipulating that all his acts in that regard would be for and on behalf of the marital community.

¶ 3 Southern Bankers Mortgage Corp. assigned the note and other loan documents to Liberty Federal Savings Bank, which later failed. The Federal Savings and Loan Insurance Corporation was appointed receiver; it was succeeded by the Federal Deposit Insurance Corporation (FDIC). The FDIC assigned the note and other loan documents to PNL in May 1996.

¶ 4 The note matured on December 4, 1988, but was extended by written agreement through June 4, 1989. The parties agree that the note went into default on June 4, 1989. PNL claims that the amount owing on the note as of June 20, 1997, was $1,493,-386.19, consisting of $710,000 in principal and $783,386.19 in interest. B & T does not address the amount owed in its brief. B & T claimed at trial that it lacked sufficient information to determine the amount owing.

¶ 5 On September 16, 1990, Taylor made an interest payment to the FDIC for $20,-412.50 using a cashier's check with the notation "Pacer Builders (Building Systems)" typed in the space above remitter. "Brendgen & Taylor Partnership Loan # 012–41–00091 Liberty Federal Savings Bank" was

written across the top in cursive. Accompanying the check was a handwritten letter from Taylor stating that the check was an interest payment "for the Brendgen & Taylor Partnership." B & T later claimed this interest payment on its 1990 tax return.

¶ 6 In April 1992, the FDIC wrote to B & T and the partners and advised them that the note was in default and that payment in full would be required. The letter informed B & T that it must pay $1,034,155.60 to cure the default.

¶ 7 On May 11, 1992, Mr. Brendgen responded to the FDIC letter. He pointed out that only $710,000 had been advanced to B & T, asked whether certain condemnation proceeds paid by the City of Flagstaff were credited to the note, and requested an amortization schedule. He ended the letter stating that "We appreciate your assistance in this matter as we are attempting to either bring this loan current or pay in full."

¶ 8 Over the next several years B & T, acting through its general partners, made two settlement offers, two partial payments, and included the principal amount of the debt in its 1994 and 1995 tax returns. The FDIC commenced this action on April 26, 1996. A first amended complaint was filed on September 16, 1996, substituting PNL as plaintiff. Both of these complaints named only B & T, the general partners, and Mrs. Taylor as defendants. Neither complaint sought recovery on the guaranty. After B & T filed its answer to the first amended complaint, PNL filed its second amended complaint, which added a claim for recovery on the guaranty.

¶ 9 Cross motions for summary judgment were argued to the trial court. The trial court entered formal judgment in favor of B & T in January 1998, from which PNL promptly appealed.

**STANDARD OF REVIEW**

¶ 10 The court of appeals reviews a summary judgment to determine whether a genuine issue of material fact exists and whether the trial court correctly applied the law. *See Matter of Estate of Johnson,* 168 Ariz. 108, 109, 811 P.2d 360, 361 (App.1991). Although this court's review is based on the trial court's record, we determine *de novo* whether the entry of judgment was proper. *See Phoenix Baptist Hosp. & Medical Center, Inc. v. Aiken,* 179 Ariz. 289, 292, 877 P.2d 1345, 1348 (App.1994). We view the facts most strongly against the moving party. Because the matter turns upon the interpretation to be applied to undisputed facts, this court may substitute its analysis of the record for that of the trial court. *See Arizona State Tax Com'n v. Parsons–Jurden Corp.,* 9 Ariz.App. 92, 449 P.2d 626 (1969). Where cross-motions have been filed, as here, the court may remand with instructions that judgment be entered in favor of appellant. *See McCallister Co. v. Kastella,* 170 Ariz. 455, 457, 825 P.2d 980, 982 (App.1992).

**DISCUSSION**

¶ 11 Federal law applies in this action because two federal statutes control the period of limitations for cases initiated by the FDIC and because PNL is the FDIC's successor in interest. *See Midstates Resources Corp. v. Farmers Aerial Spraying Service, Inc.,* 914 F.Supp. 1424, 1426 (N.D.Tex.1996); *F.D.I.C. v. Bledsoe,* 989 F.2d 805, 811 (5th Cir.1993). Two related statutes govern. First, 12 U.S.C. section 1821(d)(14) provides that the limitations period on any contract claim brought by the FDIC is the longer of six years from the date the claim accrues or the period specified by state law.[1] Second, 28 U.S.C. section 2415(a) restarts the accrual of limitations periods on contract claims when breaching parties either acknowledge or partially repay their debts.[2] *See Mid-*

---

**1.** Section 1821(d)(14) provides in pertinent part, as follows:

 *Statute of limitations for actions brought by conservator or receiver.*
 [T]he applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be ... in the case of any contract claim, the longer of (I) the 6-

year period beginning on the date the claim accrues; or (II) the period applicable under State law.

**2.** Section 2415(a) provides in pertinent part, as follows:

 *Time for commencing actions brought by the United States.*

*states Resources,* 914 F.Supp. at 1427 (section 2415(a)'s acknowledgement provision applies to matters also covered by section 1821(d)(14)).

■■■ ¶ 12 The federal renewal statute, 28 U.S.C. section 2415(a), codifies the common law rule that the limitations period resumes when the debtor acknowledges an indebtedness and indicates a willingness to pay it. *See U.S. v. Blusal Meats, Inc.,* 817 F.2d 1007, 1010 (2nd Cir.1987). Corbin summarizes the common law principle: "It is very generally held that an acknowledgment that a sum of money is actually due, if made without any accompanying denial of willingness, justifies the inference of a promise to pay." *Id.* (quoting 1A A. Corbin, *Corbin on Contracts* § 216 (1963)); *Trautmann Bros. Inv. Corp. v. Del Mar Conserv. Dist.,* 440 S.W.2d 314, 316 (Tex.App.1969). Further, an acknowledgment does not have to specify the amount owing, so long as it clearly refers to a specific debt. *See Victory Inv. Corp. v. Muskogee Elec. Traction Co.,* 150 F.2d 889, 891 (10th Cir.1945); *Freeman v. Wilson,* 107 Ariz. 271, 276, 485 P.2d 1161, 1166 (1971).

¶ 13 Section 2415(a) expressly provides that a partial payment restarts the running of the statute. It recognizes the common law regard for partial payment as both an acknowledgment and an expression of willingness to pay. *See Graves v. Sawyer,* 588 S.W.2d 542, 543–44 (Tenn.1979)(making a voluntary, unconditional payment on a debt, or interest due on a debt, implies a willingness to pay); *Cheatham v. Sahuaro Collection Service, Inc.,* 118 Ariz. 452, 455 n. 1, 577 P.2d 738, 741 n. 1 (App.1978).

¶ 14 We limit our discussion to the letter and payment from September 1990 and the letter of May 11, 1992, because we find them dispositive. PNL claims that the $20,412.50 interest payment on September 16, 1990, together with the note that accompanied it suffices to restart the statute of limitations. We agree.

### The September 16, 1990 Payment

■■■ ¶ 15 The payment was voluntary and unconditional and expressed no reluctance to pay. A handwritten message across the top of the check sufficiently identified the obligation by directing payment to the loan number of the debt. *See Trautmann Bros. Inv. Corp.,* 440 S.W.2d at 315–16 (words "Partial payment of note dated April 30, 1962" across top of check sufficient to restart the statute). The letter identified the check as the third quarter interest installment. Unquestioning payment of a quarter's interest on the actual debt implies that the payor accepts the amount of the debt. *See Graves,* 588 S.W.2d at 544.

■■ ¶ 16 Additionally, Taylor states in the letter that the payment is made for B & T and apologizes for its tardiness.[3] Implicit in the apology is an acknowledgment that the amount paid was due and just. The apology together with actual payment clearly convey B & T's recognition that it actually owed the creditor the claimed money and that it intended to rectify its tardiness by paying.

■■ ¶ 17 B & T argues that partial payment restarts the statute of limitations only if made under circumstances that clearly permit the inference that the debtor intended to

---

[E]xcept as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . .; *[p]rovided,* that in the event of later partial payment or written acknowledgment of the debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment.

3. B & T asserts that the partial payment could not restart the statute of limitations because the interest payment was made by Pacer, which

lacked authority to bind B & T. This argument fails for several reasons. Taylor completely owned Pacer and necessarily directed it to make the payment. He sent a letter with the check explaining that it was "for the Brendgen & Taylor Partnership." Taylor frequently used Pacer to make payments for B & T because the partnership had no bank account. Finally, Cynthia Butler who kept B & T's books testified that B & T claimed this interest payment on its 1990 income tax return, amounting to a ratification of the debt by B & T. *See Humphrey v. Southport Petroleum Co.,* 131 S.W.2d 395, 396 (Tex.App.1939)(ratification sanctions and validates something done by another).

pay the remainder of the debt. However, an explicit promise is not necessary. *Midstates Resources,* 914 F.Supp. at 1427. B & T relies on *United States v. Lorince,* 773 F.Supp. 1082, 1087 (N.D.Ill.1991), as authority for this narrow statement of the law. *Lorince* is distinguishable from this case.

¶ 18 *Lorince* involved a dispute between the Small Business Administration (SBA) and the guarantor on an SBA loan. The guarantor purchased a restaurant business and its equipment and signed a note guaranteeing the debt. Later he sold the business and its assets to a third party but remained on the note as a guarantor. When the third party went into default, the SBA accelerated the indebtedness, demanded payment, and liquidated the collateral at auction. *Id.* at 1083–85. After the statute of limitations had expired, the SBA sued Lorince, who asserted that the claim was barred.

¶ 19 The SBA argued that the statute of limitations had been restarted by its receipt of the auction proceeds, which it characterized as a partial payment. The court rejected the argument and held that even if receipt of the auction proceeds could be characterized as a partial payment, Lorince did not make the payment. He neither owned the collateral, which was pledged by the principal obligor, nor participated in the sale. Here, the partial payment was made not by some unrelated third party but by one of the partners, who identified the loan and purpose of the payment.

¶ 20 An additional important fact is that the third party to whom Lorince sold the restaurant promised to cooperate to remove Lorince's prior guaranty from the loan. The third party failed to fulfill this agreement, resulting in Lorince being sued. This fact may have contributed to the court's finding that Lorince did not demonstrate a willingness to pay. No such conditions existed here.

¶ 21 Other cases relied on by B & T are also distinguishable because in each of those cases the debtor clearly disputed the validity of the creditor's claim. *See U.S. v. Glens Falls Insurance Co.,* 546 F.Supp. 643, 644 (N.D.N.Y.1982)(partial payment with letter claiming that it was payment in full); *U.S. v.*

*Robert's Nursing Home, Inc.,* 710 F.2d 1275, 1280 (7th Cir.1983)(letter specifically denied validity of the claims); *John W. Masury & Son v. Bisbee Lumber Co.,* 49 Ariz. 443, 474, 68 P.2d 679, 693 (1937)(letter claiming that creditor damaged debtor and demanding offsets insufficient to restart statute).

### The May 11, 1992 Letter from Brendgen to the FDIC

 ¶ 22 PNL argues that Brendgen's letter of May 11, 1992 to the FDIC acknowledged the indebtedness, expressed an intent to honor it, and restarted the statute of limitations. B & T contends that the May 11 letter does not evidence a willingness to pay any certain amount. The fact that the amount is not specified is of no consequence where the amount can easily be ascertained once the debt is identified. *Freeman v. Wilson,* 107 Ariz. at 276, 485 P.2d at 1166 (calling the amount the "Freeman money" was a sufficiently specific reference to the debt). Brendgen specifies the amount of the principal as $710,000, which the FDIC essentially accepts in a later letter. Thus the amount can easily be identified. Nevertheless, there is no requirement that an acknowledgment specify the amount owing, as long as it clearly refers to a specific debt. *See Victory Inv. Corp. v. Muskogee Elec. Traction Co.,* 150 F.2d at 891.

¶ 23 In *Buxton v. Diversified Resources Corp.,* 634 F.2d 1313, 1317 (10th Cir.1980), the Tenth Circuit discussed what would satisfy as an acknowledgment:

> It is clear from the cases that the acknowledgment need not express the intention of acknowledging by use of the term. It is legally sufficient if the purported acknowledgment is in such terms as to communicate this concept or thought to the person receiving it.

The court then found the following language to be a satisfactory acknowledgment:

> Our auditors are making an examination of our financial statements which indicate the following amount payable to you on notes: ... Please confirm the accuracy of the above information....

*Id.* We find this language analogous to the following comment in Brendgen's May 11 letter:

> The amount of the promissory note is $710,000 rather than $750,000.00 mentioned in Mr. Sim's letter. Per our original agreement with Southern Bankers Mortgage Corporation we were authorized to borrow a maximum of $750,000 but limited borrowing to $710,000.

Here the statement is even more definitive because it is made as an assertion rather than as a query asking for confirmation.

¶ 24 Additionally, Brendgen's May 11 letter requested an amortization schedule and asked whether a payment by the City of Flagstaff had been credited. A request for an amortization schedule indicates an intent to make payments, just as the query about the Flagstaff payment demonstrates an expectation that a payment has been or soon will be made.

¶ 25 Brendgen's letter concludes by stating "[we] appreciate your assistance in this matter as we are attempting to either bring this loan current or pay in full." B & T claims that this unambiguous assertion of an intent to pay is contradicted by subsequent settlement offers. We disagree. The later settlement offers do not constitute a denial that the debt existed; they manifest nothing more than B & T's attempt to get the best deal possible. *See U.S. v. Culver,* 958 F.2d 39, 41 n. 1 (4th Cir.1991) (desire to compromise on amount of debt due to inability to pay, rather than unwillingness to pay, does not preclude acknowledgment that restarts statute of limitations); *Midstates Resources,* 914 F.Supp. at 1427 (letter seeking settlement because of inability to pay restarted all relevant statutes). The concluding line of the May 11 letter expresses both a willingness and intent to pay the debt and thus suffices to restart the statute of limitations.

**Acknowledgments, partial payments and the guarantors**

¶ 26 B & T argues that acknowledgments and partial payments by the debtor do not renew the statute of limitations as to the guarantors. The general rule is that partial payments of a note by a principal debtor do not toll the statute as to the note's guarantors. *See United States v. Rollinson,* 866 F.2d 1463, 1468 (D.C.Cir.1989).

¶ 27 B & T argues that this rule applies because the tolling statute codifies the common law rule that under certain circumstances a debtor may be deemed to have entered into a new contract to pay a barred debt. The Tenth Circuit rejected the new contract argument in *F.D.I.C. v. Petersen,* 770 F.2d 141, 143 (10th Cir.1985):

> Acknowledgment or part payment of the debt does not constitute a new agreement. It only suspends the running of the statute of limitations against the party making such acknowledgment or partial payment.

¶ 28 The rationale behind the general rule is that "[a] guarantor's **consent** to the debtor's future conduct may not be presumed merely on the basis of the original guarantee." *F.D.I.C. v. Associated Nursery Systems, Inc.,* 948 F.2d 233, 238 (6th Cir. 1991) (quoting *United States v. Rollinson,* 866 F.2d at 1469 (emphasis added)). Here we need not look to the original guaranty for the consent. The same persons who act for B & T also act for the corporate guarantors, and Taylor acts for his wife in regard to the partnership. The corporate guarantors necessarily knew and consented to the partial payments and written acknowledgments made by B & T. Where one joint obligor knows of and consents to an acknowledgment by the other or ratifies it, the statute is restarted as to both. *See Fisher v. Pendleton,* 184 Kan. 322, 336 P.2d 472, 478 (Kan. 1959).

¶ 29 Mrs. Taylor signed a "Consent of Spouse" in December 1986, which authorized her husband to act as her agent with regard to the business of B & T and further stated that all his acts connected with B & T business were on behalf of her marital community. Thus, the Taylors' marital community was liable for the partnership's debts. *See Garrett v. Shannon,* 13 Ariz.App. 332, 333, 476 P.2d 538, 539 (1970)(debt contracted during marriage is presumed to be a community debt).

**Do Acknowledgements Toll the Statute of Limitations for Foreclosure?**

¶ 30 The parties agree that 12 U.S.C. section 1821(d)(14) governs foreclosure actions brought by the FDIC. B & T correctly contends that section 2415(a) does not directly apply to foreclosures on security for the debt. *See Davidson v. F.D.I.C.*, 44 F.3d 246, 248–49 (5th Cir.1995). Thus the tolling features of section 2415(a) do not apply to foreclosures.

¶ 31 In *Davidson v. Federal Deposit Insurance Corporation*, the issue was whether a foreclosure action brought by the FDIC could be time-barred even though the action on the underlying note was not. The court observed that Texas has long recognized that a mortgage is a mere incident of the debt and has matched the limitations periods on a foreclosure to that on the underlying note. From this, it concluded that it would be inconsistent with the manifest scheme of Texas law to bar a foreclosure action where the limitations period had not yet run on the underlying note.

¶ 32 Arizona likewise has long recognized that a mortgage is a mere incident of the underlying debt, *see Best Fertilizers of Arizona, Inc. v. Burns*, 116 Ariz. 492, 493, 570 P.2d 179, 180 (1977), and has also expressly matched the limitations period on a foreclosure to that on the underlying note. Arizona Revised Statutes Annotated section 33–816 (1990) provides that an action to foreclose a deed of trust shall be brought "within the period prescribed by law for commencement of an action on the contract secured by the trust deed." Because the written acknowledgments and partial-payment restarted the statute of limitations with regard to the note and because the deed of trust is a mere incident to the underlying debt, we hold that the statute of limitations was also restarted with regard to the deed of trust.

¶ 33 PNL requests an award of attorney fees on appeal under A.R.S. section 12–341.01 (1992). We grant the request. PNL may establish the amount of its award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

## CONCLUSION

¶ 34 The acknowledgments and partial payment restarted the statute of limitations as of May 11, 1992. Thus, this action, including the second amended complaint filed April 24, 1997, was timely. Because no issue of fact remains, we reverse the trial court's summary judgment for B & T and remand to the trial court with instructions that summary judgment be entered on the note and foreclosure in favor of PNL.

NOEL FIDEL, Judge, and SARAH D. GRANT, Judge, concur.